

ALEX@SAKIN-LAW.COM
SAKIN-LAW.COM
917.509.7573

**5 WEST 37TH STREET
SUITE 601
NEW YORK, NY
10018-6222**

July 21, 2025

<u>BY ECF</u>
Hon. Katherine Polk Failla
U.S. District Court
Southern District of New York
40 Foley Square
New York, NY 10007



  Re: *Molesphini* et al. *v. Giordano* et al., 20-CV-5427

Dear Judge Polk Failla :

  I write on behalf of Plaintiffs Craig Molesphini and Elephant Entertainment Inc. in support of Plaintiff's application, seeking limited third-party discovery during the pendency of Defendants' contemplated Motion to Dismiss Plaintiffs' claim for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Motion").

  In determining whether "good cause" exists to impose a stay of discovery, the Court considers the following factors: "(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion." *Hong Leong Finance Limited (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (quotations omitted); Fed. R. Civ. P. 26(c).

  Here, all three factors militate in favor of permitting Plaintiffs to conduct limited third-party discovery in connection with highly relevant documents in the possession of Monmouth County (New Jersey) Prosecutor's Office.

  <u>First</u>, at issue is limited, third-party discovery sought by Plaintiffs.

  As the Court is aware, this case stems from actions undertaken in 2015-2016, when Defendant Anthony Giordano defrauded Plaintiff Molesphini by fraudulently inducing Plaintiff to invest some $409,600 of his life savings in businesses owned and controlled by Giordano, all of which businesses turned out to be shams. That misconduct resulted in Giordano's arrest and indictment in New Jersey. In June 2023, Giordano entered into a plea agreement, pleading guilty to Misconduct by a Corporate Official in the Second Degree (N.J. Stat. § 2C:21-9), a felony under New Jersey law. As part of the plea agreement, Defendant agreed to make full restitution to his five victims, including Molesphini. In exchange, the State agreed to recommend Giordano for Pre-Trial Intervention (PTI) – a New Jersey

diversionary program offering an alternative to incarceration. Giordano's successful completion of PTI in June 2025 – which lifted the stay of this matter -- also triggers document expungement, pursuant to N.J. Stat. §2C:52-6. Under that statute, when a person "was discharged without a conviction or finding of guilt, the Superior Court shall, at the time of dismissal, acquittal, or discharge . . . order the expungement of all records and information relating to the arrest."

At issue are soon-to-be expunged bank records, and related documents, collected by the Monmouth County Prosecutor's Office, which provide key evidence that Defendant fraudulently diverted Molesphini's funds – contrary to all representations made to his investors -- to pay for personal expenses such as travel, entertainment, gas, dry cleaning, a gym membership, restaurants, and monthly car payments. As such, the universe of documents sought is limited, and is contained in a central repository, with the subpoena to be directed at a single third party, namely the Monmouth County Prosecutor's Office. *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 490 (S.D.N.Y. 2022) (permitting "expedited document and deposition discovery on eight topics" during pendency of motion to dismiss).

<u>Second</u>, any stay risks imposing significant – perhaps irreversible -- prejudice on Plaintiff.

By email dated October 7, 2024 – submitted previously in connection with Plaintiffs' Motion to Lift the Stay of this action (Doc. No. 50-1) –Lawrence Nelsen, the Monmouth County Assistant Prosecutor in charge of Giordano's prosecution, wrote to Plaintiffs' counsel that "We typically keep our files for five years after any appeals. If there is any expungement, I believe the file is destroyed immediately." Nelsen also advised counsel that "banks will keep records for 7 years," implying that such records would no longer be in the banks' possession here, where the fraud at issue occurred in 2015-2016.

Further, according to the terms of the New Jersey statute, any preservation of expunged records does not necessarily apply to bank records. Specifically, pursuant to N.J. Stat. 2C-52:1(a), expungement is defined as "the extraction, sealing, impounding, or isolation of all records . . . concerning a person's detection, apprehension, arrest, detention, trial or disposition of an offense within the criminal justice system." To be sure, the above language concerning "extraction, sealing, impounding, or isolation" does not, on its face, involve the destruction of such records. However, that same provision's definition of expunged records does not include bank or financial records at issue here: "Expunged records shall include complaints, warrants, arrests, commitments, processing records, fingerprints, photographs, index cards, 'rap sheets' and judicial docket records." N.J. Stat. 2C-52:1(b). Thus, to the extent expungement involves the isolation of certain records – but not their destruction – the law may well not apply to the types of evidentiary records at play here.

In light of the above-cited circumstances, unless this Court grants this application, and affords Plaintiff an avenue to subpoena these documents from the New Jersey authorities, Plaintiff may forever lose his ability to obtain these documents, and his ability to prosecute this case may be irrevocably, and materially, harmed, if not destroyed. Without access to documents in the possession of the Monmouth County Prosecutor's Office, Molesphini would be reduced to demanding them from Giordano, a confirmed defrauder of at least five victims. Nothing about Giordano – who has apparently made a career of fraud and deception – suggests that he would produce any such highly prejudicial, revealing

documents.[1]  *See Am. Seeds, LLC v. Watson*, 2010 U.S. Dist. LEXIS104102, at *3 (D.S.D. Sept. 27, 2010) (rejecting suggestion that "plaintiff obtain the requested [bank records] from the defendant himself" as "frivolous," given that "[b]ank records are normally obtained from the bank, especially in a case where the defendant is accused of significant fraud.").

On the other hand, any prejudice to Giordano is practically non-existent.  In the unlikely event the Court grants Defendants' Motion, and dismisses Plaintiffs' sole federal law claim, Plaintiffs' common-law claims would survive, and the case would be remanded to state court.  In that forum, any discovery gathered from the Monmouth County Prosecutor's Office would be of significant use and relevance.  Thus, in granting this application, there is no risk of wasting the parties' resources; any materials gathered via third-party subpoena will find a use either in this action, or in any state court action.

<u>Third</u>, Defendants' Motion is unlikely to be granted.  Defendants argue that, by July 2020 (when this case was commenced), the two-year statute of limitations had run on Plaintiffs' claim for violation of Section 10(b) of the Securities Exchange Act of 1934.  But the two-year limitations period does not start running when a plaintiff "gets wind" of wrongdoing.  Indeed, as held by the Second Circuit, "the limitations period commences not when a reasonable investor would have begun investigating, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation."  *City of Pontiac Gen. Employees Retirement System v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011).  Defendants argue that a reasonable investor would have uncovered Giordano's fraud very quickly, given that – as Defendants allege -- Molesphini learned of the fraud in 2019 by merely "mak[ing] a single phone call" to Reliance.  Doc. No. 57 at 3.

But the Amended Complaint nowhere states that Molesphini made a "single phone call" to Reliance, and instead states that "[i]n early 2019, Molesphini spoke with a representative of Reliance," who informed him of the true state of Nue-Trition's product.  Doc. No. 5, ¶101.  The "single phone call" theory of discovery is simply invented by Defendants to support their argument.  Furthermore, to the extent that in 2017 Molesphini did begin to suspect that he was a victim of fraud, when his acquaintance Annie Leonard told him that she had also invested funds in in Nue-Trition, but had received no information about the company since her investment, there is no ground to argue that a reasonable investor should have immediately contacted Reliance.

We are available at the Court's convenience.

Respectfully,

/s/ Alexander Sakin

Alexander Sakin

---

[1] In that regard, it is worth noting that in May 2025, Giordano was arrested by the federal authorities in New Jersey on counts of wire fraud and money laundering.  *See* Exhibit 1, attached hereto.

The Court has reviewed Defendants' letter motion (Dkt. #64) and Plaintiffs' letter motion (Dkt. #65) regarding limited third-party discovery during the current stay of discovery while Defendants' potentially dispositive motion to dismiss is pending.  The Court DENIES Plaintiffs' application for limited third-party discovery, specifically, to subpoena certain records in the possession of the Monmouth County Prosecutor's Office.  While a potentially dispositive motion is pending, the Court will not lift the stay of discovery to allow Plaintiffs to subpoena records that, (i) if they are in fact expunged during the pendency of this motion, (ii) will not necessarily be destroyed, and which, (iii) if expunged, will be available for inspection and use upon application to the New Jersey Superior Court.

Plaintiffs seek "soon-to-be-expunged bank records, and related documents, collected by the Monmouth County Prosecutor's Office."  (Dkt. #65 at 2).  Contrary to Plaintiffs' concern that the records will be destroyed upon expungement (*see id.*), as the New Jersey Supreme Court has stated, "[w]hen a court enters an order of expungement, criminal records are extracted and isolated, but not destroyed."  *N.J. Div. of Child Prot. & Permanency* v. *A.P.*, 318 A.3d 632, 639 (N.J. 2024) (internal quotation marks omitted).  This formed part of the basis for the Court's previous decision to reject Plaintiffs' application to lift the stay in this action to seek the very same records.  (*See* Dkt. #52; *see also* Dkt. #64, Ex. 6(indicating that expunged records are to be retained for ten years after a case is closed)).  The Court also previously concluded that, contrary to Plaintiffs' contention, the definition of "expunged records" under New Jersey law does not necessarily exclude bank and financial records (leaving them, in Plaintiffs' estimation, vulnerable to destruction).  (Dkt. #52).

On top of the Court's previous conclusions, under New Jersey law, the records Plaintiffs seek (if they are ordered expunged while the stay of discovery is in effect) would be available for inspection and use in a civil suit upon application to the Superior Court that expunged the records.  New Jersey's expungement statute provides that, "[w]hen a person has been arrested or held to answer for a crime ... under the laws of this State or of any governmental entity thereof and proceedings

against the person were dismissed, the person was acquitted, or the person was discharged without a conviction or finding of guilt, *the Superior Court shall*, at the time of dismissal, acquittal, or discharge, or, in any case set forth in paragraph (1) of this subsection, *order the expungement of all records and information relating to the arrest*." N.J. Stat. § 2C:52-6(a) (emphasis added). Plaintiffs maintain that "Giordano's successful completion of PTI in June 2025 ... triggers document expungement, pursuant to N.J. Stat. § 2C:52-6." (Dkt. #65 at 2). Plaintiffs accordingly characterize the records they seek as "soon-to-be-expunged." (*Id.*). But Plaintiffs overlook that § 2C:52-19 "prescribes an exception to the expungement of criminal files and records, including those expunged pursuant to N.J.S.A. 2C:52-6(a)." *A.P.*, 318 A.3d at 639.

Specifically, § 2C:52-19 provides that:

> Inspection of the files and records, or release of the information contained therein, which are the subject of an order of expungement, or sealing under prior law, may be permitted by the Superior Court upon motion for good cause shown and compelling need based on specific facts. The motion or any order granted pursuant thereto shall specify the person or persons to whom the records and information are to be shown and the purpose for which they are to be utilized. Leave to inspect shall be granted by the court only in those instances where the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings. Such records may not be inspected or utilized in any subsequent civil or criminal proceeding for the purposes of impeachment or otherwise but may be used for purposes of sentencing on a subsequent offense after guilt has been established.

N.J. Stat. § 2C:52-19. Or as the New Jersey Supreme Court has more concisely put it, § 2C:52-19 "permits the inspection of expunged records if the Superior Court finds good cause shown

and compelling need based on specific facts, and only in those instances where the subject matter of the records of arrest or conviction is the object of litigation or judicial proceedings." *A.P.*, 318 A.3d at 640 (internal quotation marks omitted).

The New Jersey Supreme Court has elaborated on how to meet this standard. *See A.P.*, 318 A.3d at 640-41. And although § 2C:52-19 provides that "such records may not be inspected or utilized in any subsequent civil or criminal proceeding for the purposes of impeachment or otherwise," N.J. Stat. § 2C:52-19, the New Jersey Supreme Court has expressly held that this caveat "clearly addresses a future proceeding distinct from the pending proceeding for which the movant seeks the expunged records." *A.P.*, 318 A.3d at 641 n.6. That is, the instant action may serve as the requisite "litigation or judicial proceedings" under § 2C:52-19.

In sum, Plaintiffs may seek the bank and financial records in the manner prescribed by New Jersey's expungement statutory scheme. The Court will not help Plaintiffs circumvent New Jersey's scheme by permitting Plaintiffs to subpoena the expunged records directly from the Monmouth County Prosecutor's Office while discovery in this action is stayed. Plaintiffs are free to apply for use of the records in accordance with § 2C:52-19.

The Clerk of Court is directed to terminate the pending motions at docket entries 64 and 65. Discovery remains stayed pending the resolution of Defendants' motion to dismiss.

Dated:   July 28, 2025         SO ORDERED.
         New York, New York

*[signature: Katherine Polk Failla]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE